1 PETER D. KEISLER
  Assistant Attorney General
2
  EUGENE M. THIROLF
3 Director,
  KENNETH L. JOST
4 Deputy Director,
  Office of Consumer Litigation
5
  JOHN W. BURKE (VA BAR NO. 72780)
6 Trial Attorney, Office of Consumer Litigation
  Civil Division
7 United States Department of Justice
  P.O. Box 386
8 Washington, D.C. 20044
  Telephone: 202-353-2001
9 Facsimile: 202-514-8742
  Email: josh.burke@usdoj.gov
10
  Attorneys for Plaintiff United States of America
11
12              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
13
14 UNITED STATES OF AMERICA,

15     Plaintiff,

16         v.                          COMPLAINT FOR CIVIL
                                       PENALTIES, PERMANENT
17 ADTERACTIVE, INC., doing            INJUNCTION, AND OTHER
   business as FreeGiftWorld.com       EQUITABLE RELIEF
18 and SamplePromtionsGroup.com,

19     Defendant.

20

21      Plaintiff, the United States of America, acting upon

22 notification and authorization to the Attorney General by the

23 Federal Trade Commission ("FTC" or "Commission"), pursuant to

24 Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"),

25 15 U.S.C. § 56(a)(1), for its complaint alleges:

26      1.    Plaintiff brings this action under Sections 5(a),

27 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act, 15 U.S.C.

28 §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and under Section

Complaint                    Page 1 of 12

1  7(a) of the Controlling the Assault of Non-Solicited Pornography

2  and Marketing Act of 2003 ("CAN-SPAM" or the "CAN-SPAM Act"),

3  15 U.S.C. § 7706(a), to obtain monetary civil penalties, a

4  permanent injunction, and other equitable relief for defendant's

5  violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and

6  Section 5(a) of CAN-SPAM, 15 U.S.C. § 7704(a).

7                          **JURISDICTION AND VENUE**

8      2.   This Court has subject matter jurisdiction over this

9  matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and

10  15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a) and 57b.  This action

11  arises under 15 U.S.C. §§ 45(a) and 7706(a).

12      3.   Venue is proper in this District under 28 U.S.C.

13  §§ 1391(b) and (c), 1395(a), and 15 U.S.C. § 53(b).

14                      **INTRADISTRICT ASSIGNMENT**

15      4.   The events giving rise to the United States' claims

16  occurred in substantial part in San Francisco County.

17                              **DEFENDANT**

18      5.   Defendant Adteractive, Inc. is a California corporation

19  with its principal place of business located at 303 2nd Street,

20  Suite 375, San Francisco, CA 94107.  Adteractive does business as

21  FreeGiftWorld.com and SamplePromotionsGroup.com.  Since June 1,

22  2004, Adteractive has formulated, directed, controlled, or

23  participated in the acts and practices set forth in this

24  complaint.  Adteractive resides in the Northern District of

25  California and transacts business within this District and

26  throughout the United States.

27                              **DEFINITIONS**

28      6.   "**Electronic mail message**" (or "**email**") means a message

Complaint                    Page 2 of 12

1  sent to a unique email address.  15 U.S.C. § 7702(6).

2      7.   "**Electronic mail address**" means a destination, commonly

3  expressed as a string of characters, consisting of a unique user

4  name or mailbox (commonly referred to as the "local part") and a

5  reference to an Internet domain (commonly referred to as the "domain

6  part"), whether or not displayed, to which an email message can be

7  sent or delivered.  15 U.S.C. § 7702(5).

8      8.   "**Commercial electronic mail message**" means any email

9  message the primary purpose of which is the commercial

10  advertisement or promotion of a commercial product or service

11  (including the content on an Internet website operated for

12  commercial purposes).  15 U.S.C. § 7702(2).

13      9.   "**Initiate**," when used with respect to a commercial email

14  message, means to originate or transmit such message or to procure

15  the origination or transmission of such message.   15 U.S.C.

16  § 7702(9).

17      10.  "**Landing page**" means, in online marketing, a specific web

18  page that a visitor reaches after clicking a link or advertisement

19  in an email or banner ad.  This page usually showcases content that

20  is an extension of the link or ad.

21      11.  "**Procure**," when used with respect to the initiation of a

22  commercial email message, means intentionally to pay or provide

23  other consideration to, or induce, another person to initiate such

24  a message on one's behalf.  15 U.S.C. § 7702(12).

25      12.  "**Protected computer**" means a computer which is used in

26  interstate or foreign commerce or communication, including a

27  computer located outside the United States that is used in a manner

28  that affects interstate or foreign commerce or communication of the

1 | United States.  15 U.S.C. § 7702(13); 18 U.S.C. § 1030(e)(2)(B).

2 |     13.  "**Sender**" means a person who initiates a commercial

3 | email message and whose product, service, or Internet website is

4 | advertised or promoted by the message.  15 U.S.C. § 7702(16).

5 | <u>**DEFENDANT'S MARKETING PRACTICES**</u>

6 |     14.  Since June 1, 2004, and continuing to the present,

7 | using the names "FreeGiftWorld.com" or

8 | "SamplePromotionsGroup.com," Defendant has offered consumers

9 | supposedly free merchandise, such as digital cameras, laptop

10 | computers, and flat-screen televisions.

11 |     15.  Defendant advertises and markets its offers through

12 | email and Web-based ads.  Defendant's emails contain subject

13 | lines such as: "Test and keep this Flat-Screen TV"; "Test it –

14 | Keep it – Microsoft® Xbox 360"; "Congratulations!  Claim Your

15 | Choice of Sony, HP or Gateway Laptop!"; or "Congratulations!

16 | You've Been Chosen To Receive A Free $1000 Check!"

17 |     16.  Defendant's Web-based ads feature, among other things,

18 | trivia games or contests such as:  "Who is this Celebrity? [Photo

19 | of Angelina Jolie] Participate Now and You'll Receive a FREE SONY

20 | PLAYSTATION 3."  (Such products and items are referred to herein

21 | as "promised free merchandise.")

22 |     17.  Defendant's emails and Web-based ads represent,

23 | expressly or by implication, that the consumer viewing the

24 | message has won a contest, or has been specially selected as a

25 | "secret shopper" to test new products that the consumer then can

26 | keep.

27 |     18.  Defendant's emails and Web-based ads contain links

28 | that, when clicked on, take one to a landing page operated by

Complaint                    Page 4 of 12

1  Defendant or its affiliates.  The landing page recapitulates and

2  expands upon Defendant's initial promised free merchandise offer.

3  For example, the landing page for Defendant's email offer

4  soliciting consumers to become "secret shoppers" by testing and

5  keeping a flat-screen TV states, "Get this gift FREE*!  Just for

6  Sampling Trial Offers."  This is followed by a photo of the flat-

7  screen TV, a list price of $749 crossed out, and underneath in

8  bold red letters is written, "FREE*."

9      19.  Defendant does not clearly and conspicuously disclose

10  that to obtain the promised free merchandise one must incur

11  expenses.  A consumer must accept and pay for – in the

12  Defendant's parlance, "complete" or "participate in" – a certain

13  number of goods or services promoted by third parties to qualify

14  for the promised free merchandise that Defendant promotes in its

15  emails and Web-based ads.  Moreover, Defendant does not clearly

16  and conspicuously disclose the costs and obligations associated

17  with participating in third-party promotions, such as applying

18  and qualifying for credit cards or automobile loans.

19      20.  On its landing page, Defendant requests the consumer to

20  enter his or her email address, followed by his or her name and

21  mailing address.  Defendant uses this information, in part, to

22  send to the consumer a "welcome" email containing a password and

23  information on how to access the consumer's account on

24  Defendant's website.  A consumer must have access to his or her

25  account to obtain the promised free merchandise.  However, in

26  numerous instances, the consumer did not receive Defendant's

27  "welcome" email because some consumers' email providers have

28  treated Defendant's email as spam, blocking it or filtering it so

1  that it never reached the consumer's inbox.

2      21.  Once the consumer has submitted his or her personal

3  information, Defendant leads the consumer through a series of web

4  pages containing advertisements for various goods and services

5  from third parties.  However, defendant does not clearly and

6  conspicuously disclose that these advertisements are an

7  introductory tier of "optional" advertisements that do not

8  qualify the consumer for the promised free merchandise.

9      22.  After the consumer navigates Defendant's "optional"

10 promotions – often taking up five or six consecutive computer

11 screens, each with multiple offers – he or she eventually reaches

12 a link that, when clicked, takes the consumer to the first of

13 three tiers of offers in which the consumer must participate to

14 obtain the promised free merchandise.

15     23.  Defendant assigns a "level" to each of its advertised

16 offers – the higher the "level," the more third-party promotions

17 a consumer must "participate in" to receive the promised free

18 merchandise.  For example, for a "level 6" promised free

19 merchandise offer, such as a digital camera, laptop, or flat-

20 screen television, the consumer must participate in two "silver"

21 third-party promotions, two "gold" third-party promotions, and

22 two "platinum" third-party promotions.

23     24.  Defendant's websites, email, and web-based ads

24 primarily promote "level 6" promised free merchandise.  The

25 allure of these premium promised free merchandise offers entice

26 consumers to participate in Defendant's program.  However, for

27 all of Defendant's promised free merchandise offers, except for

28 its "level 1" offers, consumers must expend money to qualify for

Complaint                        Page 6 of 12

1 the promised free merchandise.  For example, one of Defendant's

2 third-party "platinum" promotions (within a "level 6" promised

3 free merchandise offer) requires the consumer to subscribe to a

4 year of satellite television at a cost of almost $600.  Other

5 third-party promotions include DVD deliveries, CDs and music

6 subscriptions, or instructional materials.

7    25.  Some of the offers have free trial periods, which

8 require the consumer to participate for a minimum period of time

9 to qualify for Defendant's promised free merchandise.  Moreover,

10 some of these offers contain negative option components in which

11 the consumer who does not cancel will be billed automatically.

12    26.  In some instances, the consumer stops trying to qualify

13 for Defendant's promised free merchandise, either because of the

14 cost involved or the time and effort required.  Although the

15 consumer has expended money or incurred other obligations in

16 pursuit of Defendant's promised free merchandise, because he or

17 she has not completed all of Defendant's required third-party

18 promotions, the consumer does not receive the promised free

19 merchandise.

20    27.  In most instances, it is impossible for the consumer to

21 qualify for Defendant's promised free merchandise without

22 spending money.

23            **DEFENDANT'S EMAIL PRACTICES**

24    28.  Since June 1, 2004, and continuing to the present,

25 Defendant has initiated the transmission of commercial email

26 messages to protected computers.  The primary purpose of these

27 commercial email messages has been the commercial advertisement

28 or promotion of Internet websites operated for a commercial

1  purpose by Defendant.

2      29.  Defendant is an "initiator" with respect to an email

3  message when it has either originated or transmitted a message

4  itself or has procured the origination or transmission of a

5  message through payments or other consideration, or inducements,

6  to others.

7      30.  Defendant is a "sender" with respect to an email

8  message when it has initiated a message and it is Defendant's

9  websites that are being advertised or promoted by such message.

10     31.  In numerous instances, to induce consumers to open and

11 read its commercial emails, Defendant has initiated commercial

12 email messages that contain subject headers that misrepresent the

13 content or subject matter of the message, including, but not

14 limited to, false representations that consumers have won a

15 contest, or that consumers can "test and keep" products such as

16 laptops and digital music players.

17                  **VIOLATIONS OF THE FTC ACT**

18     32.  As set forth below, Defendant has violated Section 5(a)

19 of the FTC Act in connection with advertising, offering,

20 marketing, and promoting of promised free merchandise.

21                          **COUNT I**

22     33.  In numerous instances, Defendant has represented,

23 expressly or by implication, that Defendant's promised free

24 merchandise is without cost or obligation.

25     34.  Defendant has failed to clearly and conspicuously

26 disclose to consumers the material terms and conditions of its

27 program, including:

28          a.   that consumers must pay money or other

Complaint                    Page 8 of 12

1    consideration to participate in Defendant's

2    program; and

3    b.    the costs and obligations for participating in

4    Defendant's program.

5    35.    As a result of the representation set forth in

6 Paragraph 32, Defendant's failure to clearly and conspicuously

7 disclose the material information set forth in Paragraph 33 is

8 deceptive, and violates Section 5(a) of the FTC Act, 15 U.S.C.

9 § 45(a).

10    **VIOLATION OF THE CAN-SPAM ACT**

11    36.    The CAN-SPAM Act, 15 U.S.C. § 7701 _et seq._, became

12 effective on January 1, 2004, and has since remained in full

13 force and effect.

14    37.    Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2),

15 states:

16    It is unlawful for any person to initiate the
    transmission to a protected computer of a

17    commercial electronic mail message if such
    person has actual knowledge, or knowledge

18    fairly implied on the basis of objective
    circumstances, that a subject heading of the

19    message would be likely to mislead a
    recipient, acting reasonably under the

20    circumstances, about a material fact
    regarding the contents or subject matter of

21    the message (consistent with the criteria
    used in enforcement of section 45 of this

22    title).

23    38.    Section 7(e) of CAN-SPAM, 15 U.S.C. § 7706(e), states

24 that in any action to enforce compliance through an injunction

25 with Section 5(a)(2) and other specified sections of CAN-SPAM,

26 the FTC need not allege or prove the state of mind required by

27 such sections.

28

Complaint                    Page 9 of 12

39.   Section 7(a) of the CAN-SPAM Act, 15 U.S.C. § 7706(a), states:

> [T]his chapter shall be enforced by the [FTC] as if the violation of this chapter were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57a(a)(1)(B)).

## COUNT II

40.   In numerous instances, Defendant has initiated the transmission, to protected computers, of commercial email messages that contained subject headings that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

41.   Therefore, Defendant's acts or practices violate Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2).

## CONSUMER INJURY

42.   Consumers throughout the United States have been injured as a result of Defendant's unlawful acts or practices. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and to harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

43.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

44.   Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as

Complaint                    Page 10 of 12

1 amended, and as implemented by 16 C.F.R. § 1.98(d) (1997),

2 authorizes this Court to award monetary civil penalties of not

3 more than $11,000 for each violation of CAN-SPAM. Defendant's

4 violations of CAN-SPAM were committed with the knowledge required

5 by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

6      45.   This Court, in the exercise of its equitable

7 jurisdiction, may award ancillary relief to remedy injury caused

8 by Defendant's violations of CAN-SPAM and the FTC Act.

9                       **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiff requests that this Court, as authorized

11 by Sections 5(a), 5(m)(1)(A), 13(b) and 19 of the FTC Act,

12 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b) and 57b, and pursuant to

13 its own equitable powers:

14      1.   Enter judgment against Defendant and in favor of

15 Plaintiff for each violation alleged in this complaint;

16      2.   Award Plaintiff monetary civil penalties from Defendant

17 for every violation of CAN-SPAM;

18      3.   Award Plaintiff such relief as the Court finds

19 necessary to redress injury to consumers resulting from

20 Defendant's violations of Section 5(a) of the FTC Act, 15 U.S.C.

21 § 45(a), including, but not limited to, rescission of contracts,

22 restitution, the refund of monies paid, and the disgorgement of

23 ill-gotten monies;

24      4.   Enter a permanent injunction to prevent future

25 violations of the FTC Act and CAN-SPAM;

26      5.   Order Defendant to pay the costs of this action; and

27 award Plaintiff such other and additional relief as the Court may

28 determine to be just and proper.

Complaint                    Page 11 of 12

1

2  Dated: _November 20_, 2007          Respectfully submitted,

3                                      FOR THE UNITED STATES OF AMERICA
                                       PETER D. KEISLER, JR.
4  OF COUNSEL:                         Assistant Attorney General
                                       Civil Division
5  LOIS C. GREISMAN                    U.S. DEPARTMENT OF JUSTICE
   Associate Director for
6  Marketing Practices
   FEDERAL TRADE COMMISSION            EUGENE M. THIROLF
7                                      Director,
   Stephen L. Cohen                    KENNETH L. JOST
8  Ethan Arenson                       Deputy Director,
   Attorneys                           Office of Consumer Litigation
9  Federal Trade Commission
   600 Pennsylvania Ave., N.W.,
10 Washington, DC  20580               John W. Burke
   PHONE:  202-326-3222; 326-          Trial Attorney
11 2204                                Office of Consumer Litigation
   FAX:  202-326-3395                  U.S. Department of Justice
12                                     P.O. Box 386
                                       Washington, D.C. 20044
13                                     PHONE: 202-353-2001
                                       FAX: 202-514-8742
14                                     EMAIL: josh.burke@usdoj.gov

15

16

17

18

19

20

21

22

23

24

25

26

27

28